IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11. |
| | ) | |
| BROADWAY 3012, LLC, *et al.*, | ) | Case No. 09-20446 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Bruce W. Black |

## ORDER, PURSUANT TO 11 U.S.C. § 363 AND 1123(a)(5)(D) AND FED. R. BANKR. P. 2002 AND 6004, (i) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTOR'S PROPERTY, (ii) APPROVING NOTICE PROCEDURES REGARDING THE SALE, AND (iii) SCHEDULING A HEARING DATE TO CONSIDER THE SALE

Upon the motion (the "Motion")[1] of Broadway 3012, LLC (the "Debtor"), pursuant to 11 U.S.C. §§ 363 and 1123(a)(5)(D) and Fed. R. Bankr. P. 2002 and 6004, for entry of an order (i) approving the proposed bid procedures, which are attached as **Exhibit 1** hereto (the "Bid Procedures"), for the sale of the Property, (ii) approving certain notice procedures with respect to such sale, and (iii) scheduling a hearing (the "Sale Hearing") to consider the Debtor's request to approve the sale of the Property (the "Sale") to the Winning Bidder; the Court having reviewed the Motion and the Court determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest; it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other due deliberation thereon is necessary; and good and sufficient cause appearing therefore, it is hereby FOUND THAT:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 363 and 1123(a)(5)(D) and Fed. R. Bankr. P. 2002 and 6004.

---

[1]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Motion or the Bid Procedures (as defined herein), as applicable.

Venue of the Debtor's chapter 11 case and this Motion in this District is property pursuant to 28

U.S.C. §§ 1408 and 1409.

      B.     The Debtor has articulated good and sufficient reasons for approving (1) the

Bid Procedures, and (2) the form and manner of notice of the Bid Procedures and the Sale.

      C.     The Bid Procedures are reasonable and appropriate.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:

      1.     The Bid Procedures attached hereto as **Exhibit 1** are approved, fully

incorporated into this Order and the Debtor is authorized and directed to act in accordance

therewith.

      2.     Within five (5) business days after the entry of this Order, or as soon

thereafter as practicable (the "Notice Date"), the Debtor shall serve a notice of the sale (the "Sale

Notice"), as well as a copy of the Motion, this Order and the Bid Procedures upon (a) all entities

known to have expressed an interest in the Property; (b) all entities known to have asserted any lien,

claim, interest or encumbrance in or upon the Property; (c) the Office of the United States Trustee;

(d) counsel to First Bank; (e) counsel to Urban Broadway Mezz, LLC.; (f) all creditors listed in the

Debtor's Schedules; and (g) those parties who requested notice pursuant to Bankruptcy Rule 2002.

Such notice shall be sufficient and proper notice of the sale with respect to interested parties.

      3.     In the event that the Property is sold pursuant to a plan confirmed by this

Court, such Sale shall be exempt from all state and local real estate transfer taxes, pursuant to 11

U.S.C.A. § 1146(c).

      4.     Any objection to the Sale Relief must be filed with the Court and served on

Debtor's counsel (Bauch & Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois

60604) so as to be received on or before the date that is five (5) business days prior to the Sale

Hearing (December 3, 2010).

5.     The form of sale agreement attached hereto as **Exhibit 2**, or a substantially similar form (the "Sale Agreement"), is approved for the sale of the Property.

6.     A final hearing to approve the sale of the Assets to the Winning Bidder pursuant to a Sale Agreement shall be held on December 8, 2010 at 11:00 a.m. (prevailing Central time).

7.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

8.     Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: _September 15_____, 2010.          _____
                                          United States Bankruptcy Judge

**EXHIBIT 1**

# BROADWAY 3012, LLC

## BID PROCEDURES

Set forth below are the bid procedures (the "Bid Procedures") to be employed with respect to the proposed disposition of the parcels of real property located at 3012-3036 N. Broadway Street, Chicago, Illinois 60657 (the "Property").

### Sale Motion

On May 7, 2010, the Debtor filed a motion (the "Sale Motion") for orders: (A)(i) approving the Bid Procedures to be employed in connection with the proposed sale (the "Sale") of the Property, (ii) scheduling the Auction and hearing to consider approval of (a) the Sale, and (b) certain related relief, and (iii) approving the notice of the respective dates, times and places for the Auction and the Sale Hearing; and, (B)(i) authorizing and approving a sale agreement, in substantially the same form attached as **Exhibit 2** to the Bid Procedures Order (as defined below) (the "Sale Agreement"), between the Debtor and the Winning Bidder (as defined herein), (ii) authorizing the Sale of the Property free and clear of all liens, claims, encumbrances and other interests, (iii) authorizing the Debtor to consummate all transactions related to the above, including the payment of the allowed claim of First Bank, the mortgagee of the Property, and (iv) granting other relief, filed in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court").

These Bid Procedures were approved and authorized by a Bankruptcy Court order (the "Bid Procedures Order") in the chapter 11 case of the Debtor, which was commenced on June 4, 2009 (the "Bankruptcy Case").

### The Bidding Process

The Debtor and its advisors shall (a) determine whether any person is a Qualified Bidder (hereinafter defined), (b) coordinate the efforts of Qualifying Bidders in conducting their due diligence investigations, (c) receive offers from Qualified Bidders, and (d) negotiate any offers made to purchase the Property (collectively, the "Bidding Process"). Any person that wishes to participate in the Bidding Process or the sale of the Property must be a Qualified Bidder. Neither the Debtor not its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Qualified Bidder.

### Participation Requirements

Any person that wishes to participate in the Bidding Process or the sale of the Property (a "Potential Bidder") must become a "Qualified Bidder." Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, each Potential Bidder must deliver (unless previously delivered) to the Debtor, not later than November 10, 2010:

(i)     An executed Sale Agreement.

(ii)    A good faith deposit (the "Deposit") in the form of good and immediately available funds in the amount equal to the greater of (a) $200,000, or (b) 1.4% of the proposed purchase price.

(iii)    Written evidence of a commitment for financing or other evidence of the ability to consummate the proposed transaction satisfactory to the Debtor with appropriate contact information for such financing sources.

A Qualified Bidder is a Potential Bidder that delivers the documents described in subparagraphs (i)-(iii) above. A bid received from a Qualified Bidder that includes all of the above required bid documents and meets all of the above requirements is a "Qualified Bidder."

### "As Is; Where Is"

The sale of the Property shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor or estate, except, with respect to a Qualified Bidder, to the extent set forth in a definitive Sale Agreement.

### Free Of Any And All Interests

Except with respect to a Qualified Bidder to the extent set forth in a definitive Sale Agreement, all of Debtor's right, title and interest in and to the Property subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Property.

### First Bank Credit Bid and Qualified Bidder

Notwithstanding anything to the contrary herein, First Bank, or its assignee, is a Qualified Bidder. Further, First Bank, or its assignee, may, if it so elects, credit bid for the Property up to the amount of its Allowed Secured Claim, which credit bid may be made without the necessity of making a Deposit, and if First Bank, or its assignee, does credit bid for the Property, such credit bid will be deemed a Qualified Bid. In the event that First Bank is the Winning Bidder, the Debtor shall transfer the Property to First Bank, or its assignee, subject to all mechanics lien claims of record that the Bankruptcy Court determines have priority with respect to First Bank, or its assignee's, interest in the Property, and all accrued real estate taxes.

If First Bank does credit bid for the Property, said bid shall constitute a "Right of First Refusal Event" under that certain Right of First Refusal Agreement dated March 31, 2009 by and between First Bank and Urban Broadway Mezz, LLC ("Urban") (the "ROFR Agreement"). If First Bank is the Winning Bidder, Urban shall then have ten (10) days after First Bank's credit bid has been approved by the Court at the Sale Hearing to exercise or waive its right to match First Bank's Winning Bid and thus become the Winning Bidder (the "Refusal Right"). If Urban exercises its Refusal Right, then Urban shall immediately comply with the terms of the Bid Procedures as a cash purchaser. If Urban waives its Refusal Right, Urban shall have no further rights in or to the Property and the ROFR Agreement shall be terminated, null and void.

### Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to (i) Bauch & Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604, Attn: Paul M. Bauch., Facsimile: (312) 427-5709, not later than 4:00 p.m. (prevailing Central time) on November 10, 2010 (the "Bid Deadline"). The Debtor may extend the Bid Deadline once or successively, but is not obligated to do so. If the Debtor extends the Bid Deadline, it shall promptly notify all Qualified Bidders of such extension.

The Debtor reserves the right to determine the value of any Qualified Bid (either by itself or in connection with one or more other Qualified Bids), and which Qualified Bid(s) constitute the highest, best and otherwise financially superior offer.

### Auction

If the Debtor receives at least two Qualified Bids, then the Debtor shall conduct an auction (the "Auction") with respect to the Property and shall provide all Qualified Bidders the opportunity to participate in the Auction. The Auction shall commence at 10:00 a.m. prevailing Central time on November 12, 2010 at Bauch & Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604. This date may be extended with the consent of Debtor, First Bank and Urban Broadway Mezz, LLC or order of the Bankruptcy Court.

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. During the Auction, bidding shall begin initially with the highest or otherwise best Qualified Bid as announced by the Debtor, and subsequently continue in minimum increments of at least $100,000.00; provided however, that if there are only two (2) Qualified Bidders remaining, the Debtor may, in its sole discretion, decrease the minimum increments to $50,000. Other than as otherwise set forth herein, the Debtor may conduct the Auction in the manner it determines in the exercise of its reasonable business judgment will result in the highest, best or otherwise financially superior offer(s) for the Property, and may continue the Auction if it determines that such continuance is in the best interests of the bankruptcy estate.

Upon conclusion of the bidding, the Auction may be closed, and the Debtor shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed transaction, and (ii) within two (2) business days identify the highest, best or otherwise financially superior offer(s) for the Property (the "Winning Bid(s)") and the entity or entities submitting such Winning Bid, the "Winning Bidder(s)"), which highest, best or otherwise financially superior offer(s) will provide the greatest amount of net value to the Debtor, and advise the Qualified Bidders of such determination.

### Acceptance of Qualified Bids

The Debtor may sell the Property to the Winning Bidder(s) upon the approval of the Winning Bid(s) by the Bankruptcy Court after the Sale Hearing (defined below). The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing (as defined herein). The

Winning Bidder's Winning Bid shall be deemed an irrevocable offer and shall remain subject to acceptance by the Debtor until the Bankruptcy Court concludes the Sale Hearing and denies approval of the Winning Bid.

## Objections

Objections to all relief requested in the Sale Motion must be in writing and filed and served so as to be actually received by counsel for the Debtor, Bauch & Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604, Attn: Paul M. Bauch, Esq., by 4:00 p.m. (prevailing Central time) on December 3, 2010.

## Sale Hearing

A hearing on all the remaining relief requested in the Sale Motion and to consider the results of the Auction (the "Sale Hearing") will be held before the Honorable Bruce W. Black, United States Bankruptcy Judge, in courtroom 615 at the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, on or about December 8, 2010 at 1 p.m. (the "Sale Hearing Date"). The Sale will be subject to the entry of an order of the Bankruptcy Court approving same.

At the Sale Hearing, the Debtor will seek entry of an order, among other things, authorizing and approving the disposition of the Property to the Winning Bidder(s) pursuant to the terms and conditions set forth in the Sale Agreement(s) submitted by such Winning Bidder(s). The Sale Hearing may be adjourned or rescheduled by the Debtor without notice other than by an announcement of the adjourned date at the Sale Hearing.

If the Property is sold to the Winning Bidder(s) after an Auction, following the approval of the sale of the Property to the Winning Bidder(s) at the Sale hearing, if such Winning Bidder(s) fails to consummate an approved sale within 210 days after the Sale Hearing Date the next highest or otherwise best Qualified Bid, as disclosed at the Sale Hearing, shall be deemed to be the Winning Bid and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such bid without further order of the Bankruptcy Court.

## Return of Good Faith Deposit

Good Faith Deposits of the Winning Bidder(s) shall be applied to the purchase price of such transaction(s) at closing. Good Faith Deposits of all other Qualified Bidders shall be held until the earlier of (i) two (2) business days after the Property has been sold pursuant to the closing of a sale approved by the Bankruptcy Court, and (ii) 45 days after the conclusion of the Sale Hearing. If a Winning Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Winning Bidder, the Debtor shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Winning Bidder.

## Modifications

The Debtor may (a) determine which Qualified Bid, if any, is the highest, best or otherwise financially superior offer, and (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, its estate and creditors.

**EXHIBIT 2**

**AGREEMENT OF SALE AND PURCHASE FOR THE
PROPERTY COMMONLY KNOWN AS 3012-3036
N. BROADWAY STREET, CHICAGO, ILLINOIS**

**Agreement of Sale and Purchase**

| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS ........................................................ | 1 |
| | 1.01    Definitions ........................................................ | 1 |
| ARTICLE II | PURCHASE AND SALE ........................................... | 2 |
| | 2.01    Purchase and Sale ............................................ | 2 |
| ARTICLE III | PURCHASE PRICE ............................................... | 3 |
| | 3.01    Purchase Price .................................................. | 3 |
| ARTICLE IV | CLOSING MATTERS ............................................ | 3 |
| | 4.01    Survey .............................................................. | 3 |
| | 4.02    Title .................................................................. | 3 |
| | 4.03    Possession, Proration and Expenses .................. | 4 |
| | 4.04    Closing ............................................................. | 4 |
| ARTICLE V | BROKERAGE ........................................................ | 5 |
| | 5.01    Brokerage ......................................................... | 5 |
| ARTICLE VI | DESTRUCTION, DAMAGE OR CONDEMNATION ......... | 6 |
| | 6.01    Destruction or Damage ..................................... | 6 |
| | 6.02    Condemnation ................................................... | 6 |
| ARTICLE VII | COVENANT REPRESENTATIONS AND WARRANTS ..... | 7 |
| | 7.01    Affirmative Covenant of Seller .......................... | 7 |
| | 7.02    Representations and Warranties of Seller ........... | 7 |
| | 7.03    Survival ............................................................. | 7 |
| | 7.04    Representations and Warranties of Purchaser ..... | 8 |
| | 7.05    Survival ............................................................. | 8 |
| | 7.06    AS IS ................................................................. | 9 |
| ARTICLE VIII | CONDITIONS PRECEDENT AND TERMINATION.......... | 10 |
| | 8.01    Conditions to Purchaser's Obligations .............. | 10 |
| ARTICLE IX | DEFAULTS AND REMEDIES ................................... | 11 |
| | 9.01    Seller Defaults .................................................. | 11 |
| | 9.02    Purchaser Defaults ........................................... | 11 |
| | 9.03    Attorneys' Fees and Costs ................................. | 12 |
| ARTICLE X | NOTICES .............................................................. | 12 |
| | 10.01    Notices ........................................................... | 12 |
| ARTICLE XI | ADDITIONAL COVENANTS ................................... | 13 |
| | 11.01    Entire Agreement, Amendments and Waivers ... | 13 |
| | 11.02    Further Assurances ......................................... | 13 |
| | 11.03    No Third Party Benefits ................................... | 13 |
| | 11.04    Interpretation ................................................. | 13 |
| | 11.05    Exculpation of Seller and Related Parties .......... | 14 |

i

**Agreement of Sale and Purchase**

ARTICLE XII      BANKRUPTCY COURT APPROVAL ........................................................   14

EXHIBIT A        LEGAL DESCRIPTION ...............................................................   16

EXHIBIT B        PERMITTED TITLE EXCEPTIONS .........................................................   B-1

EXHIBIT C        NON-FOREIGN AFFIDAVIT ...................................................................   C-1

EAST\43180412.2

## AGREEMENT OF SALE AND PURCHASE

THIS AGREEMENT is made this _____ day of _____, 2010 by and among Broadway 3012, LLC, an Illinois limited liability company, as Chapter 11 debtor in case no. 09 B 20446 ("Debtor" or "Seller") and_____ ("Purchaser").

### RECITALS:

A.     Seller is the fee owner of the Property (as hereinafter defined) commonly referred to as 3012-3036 N. Broadway Street, Chicago, Illinois 60657.

B.     Seller desires to sell, and Purchaser desires to purchase, the Property upon and subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

*ARTICLE I*
*DEFINITIONS*

*1.01   Definitions.*     When used herein, the following terms shall have the respective meanings set forth opposite each such term:

*AGREEMENT:* This Agreement of Sale and Purchase, including the Exhibits attached hereto which are by this reference incorporated herein and made a part hereof.

*BROKER:* Shall mean as defined in Section 5.01.

*CLOSING DATE:* The date selected by the Purchaser which must be within thirty (30) days after the expiration or waiver of the Due Diligence Period.

*CLOSING NOTICE:* Shall mean as defined in Section 4.04(a).

*DEED:* That certain recordable Deed to be delivered by Seller to Purchaser at the closing conveying the Property to Purchaser subject only to the Permitted Title Exceptions.

*DEPOSIT:* The greater of the sum of **$200,000 or 1.4% of the Purchase Price** which shall be deposited by Purchaser with Escrowee, as escrowee, on the date of Seller's acceptance hereof, to be held as earnest money subject to the terms of this Agreement.

*DUE DILIGENCE PERIOD:* The period commencing upon the date of this Agreement and expiring one hundred eighty (180) days after the date of this Agreement.

*ESCROWEE:* Bauch & Michaels, LLC

*INSPECTIONS:* Shall mean as defined in Section 8.01(a).

A-1

*LEGAL REQUIREMENTS:* All laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorizations, orders, directions and requirements of all governments and governmental authorities having jurisdiction of the Property and the operation thereof.

*PERMITTED TITLE EXCEPTIONS:* The matters listed and described on Exhibit B and any other matters which do not materially affect the current use of the Property.

*PROPERTY:* The unimproved land, the address of which is 3012-3036 N. Broadway Street, Chicago, Illinois 60657, legally described on Exhibit A, together with all privileges, rights, easements, hereditaments, appurtenances thereto belonging; and all right, title and interest of Seller in and to any streets, alleys, passages and other rights-of-way included therein or adjacent thereto (before or after the vacation thereof).

*PURCHASE DOCUMENTS:* Shall mean as defined in Section 11.05.

*PURCHASE PRICE:* The consideration payable by Purchaser to Seller for the Property and all other covenants and warranties contained herein, as provided in Article III.

*SELLER INDEMNIFIED PARTIES:* Shall mean as defined in Section 8.01(d).

*SURVEY:* Current survey of the Property prepared by a surveyor licensed by the State of Illinois and certified to Purchaser, the Title Insurer and such other parties as Purchaser shall reasonably designate to be prepared in accordance with the 2009 standards of Land Title Surveys of American Title Association and American Congress on Surveying and Mapping Class.

*TITLE COMMITMENT:* A commitment for an ALTA Form 1992 Owner's Title Insurance Policy for the Property issued by the Title Insurer in the full amount of the Purchase Price, covering title to the Property on or after the date hereof, showing Seller as owner of the Property in fee simple, subject only to the Permitted Title Exceptions, and other exceptions pertaining to liens or encumbrances of a definite or ascertainable amount (which, in the aggregate, do not exceed that portion of the Purchase Price payable to Seller on the Closing date) which may be removed by the payment of money at closing and which Seller shall so remove.

*TITLE INSURER:* Chicago Title Insurance Company, or such other title insurer as the Debtor may designate.

*ARTICLE II*
*PURCHASE AND SALE*

2.01   *Purchase and Sale.* Subject to the conditions and the terms contained in this Agreement:

(a)      Purchaser agrees to purchase and acquire from Seller, and Seller agrees to sell and transfer to Purchaser the Property by Deed.

A-2

*ARTICLE III*
*PURCHASE PRICE*

   3.01   *Purchase Price.* The Purchase Price shall be _____
Dollars ($_____), payable as hereinafter provided. Purchaser agrees to pay to Seller and Seller agrees to accept payment of the Purchase Price as follows:

        (a)   The Deposit (and any interest thereon) shall be applied against the cash portion of the Purchase Price at closing.

        (b)   Purchaser shall pay to Seller at closing the balance of the Purchase Price, plus or minus prorations as hereinafter provided, in cash or by certified, cashier's or escrowee check or bank wire transfer of collected federal funds, if Seller requests.

*ARTICLE IV*
*CLOSING MATTERS*

   4.01   *Survey.* No later than fifteen (15) days following Seller's acceptance of this Agreement, Seller shall deliver the Survey to Purchaser, at Seller's sole cost and expense. If the Survey discloses any encroachments or violations or any exceptions to title or matters indicating possible rights of third parties other than the Permitted Title Exceptions, Seller shall have ten (10) days from the date of delivery thereof to have the Title Insurer issue its endorsement insuring against damage caused by such encroachments, violations or unpermitted exceptions, and provide evidence thereof to Purchaser; and if Seller fails to have the same insured against, within said 10-day period, Purchaser may elect, within five (5) days after the expiration of said 10-day period, to (i) terminate this Agreement (in which event the Deposit, and any interest thereon, shall forthwith be returned to Purchaser), or (ii) accept the Property with no reduction in the Purchase Price subject to such encroachments, violations and unpermitted exceptions which shall then be deemed to be a Permitted Title Exception.

   4.02   *Title.* No later than fifteen (15) days following Seller's acceptance of this Agreement, Seller shall deliver the Title Commitment to Purchaser, at Seller's sole cost and expense. If the Title Commitment discloses exceptions to title other than the Permitted Title Exceptions, Seller shall have thirty (30) days from the date thereof to have such exceptions removed from the Title Commitment and provide evidence thereof to Purchaser; and if Seller fails to have such exceptions removed, Purchaser may elect, within five (5) days after the expiration of said 30-day period, to (i) terminate this Agreement (in which event the Deposit, and any interest thereon, shall be forthwith returned to Purchaser); or, (ii) accept title (without a reduction in the Purchase Price) subject to such unpermitted exceptions which shall then be deemed to be a Permitted Title Exception. On the Closing Date, Seller shall cause the Title Insurer to issue an owner's title insurance policy or prepaid commitment therefor pursuant to and in accordance with the Title Commitment insuring fee simple title to the Property in Purchaser as of the Closing Date, subject only to the Permitted Title Exceptions.

A-3

4.03 *Possession, Proration and Expenses.*

(a)     Sole and exclusive possession of the Property shall be delivered to Purchaser on the Closing Date.

(b)     General and special real estate and other ad valorem taxes and assessments and other state or city taxes, fees, charges and assessments affecting the Property and utility charges and deposits shall be prorated on an accrual basis as of the Closing Date on the basis of the most recent ascertainable amounts of or other reliable information in respect to each such item, and the net credit to Purchaser or Seller shall be paid in cash or as a credit against the Purchase Price payable on the Closing Date. Any item prorated on an estimated basis on the Closing Date shall be re-prorated by the parties when and as the actual amount of such item becomes known. Any adjustment due to re-proration shall be effected not later than ten (10) days following final determination of the amount of such item and demand by the party to whom credit is due.

(c)     Seller shall pay for the following expenses: title charges and premiums for a basic owner's title insurance policy with extended coverage, survey, and all state, county and municipal transfer taxes, if any, incurred in connection with the transaction contemplated hereby. Purchaser shall pay for the following expenses: all costs relating to its Inspections, all title insurance charges and premiums for any endorsements requested by Purchaser, all recordation, title insurance and money lender's escrow charges incurred in connection with any mortgage loans obtained by Purchaser. Purchaser and Seller shall each pay fifty percent (50%) of the charges of the Title Company or Escrowee for any escrow charges. The parties shall each be solely responsible for the fees and disbursements of their respective counsel and other professional advisers.

4.04 *Closing.*

(a)     The transaction contemplated hereby shall close on the Closing Date at the offices of the Escrowee, or on such earlier date as Purchaser may designate in writing to Seller at least five (5) business days prior thereto ("Closing Notice").

(b)     On the Closing Date, Seller shall deposit in the escrow or otherwise deliver to Purchaser the following:

(i)     The Deed;

(ii)     Seller's Bill of Sale;

(iii)     ALTA statement in the form required by the Title Insurer;

(iv)     Seller's certificate dated as of the Closing Date confirming that the representations and warranties of Seller are true and correct as of the Closing Date;

(v)     An executed Affidavit in the form attached hereto as Exhibit C, or a qualifying statement from the U.S. Treasury Department that the transaction is exempt from the withholding tax requirement imposed by Section *1445A* of the Internal Revenue Code and the rules and regulations promulgated there under ("Section 1445A"); and

A-4

(vi)     Such other documents, instruments, certifications and confirmations as may be reasonably required to fully effect and consummate the transactions contemplated hereby.

(c)     On the Closing Date, Purchaser shall deposit in the Escrow or otherwise deliver to Seller the following:

(i)     An ALTA statement in form required by the Title Insurer;

(ii)     The balance of the Purchase Price as provided in Section 3.01(b);

(iii)     A counterpart of Seller's Bill of Sale; and

(iv)     Such other documents, instrument, certifications and confirmations as may be reasonably required to fully effect and consummate the transaction contemplated hereby.

(d)     Seller and Purchaser shall jointly deposit in the escrow or deliver to each other at closing an agreed proration statement and certificates complying with the provisions of state, county and local law applicable to the determination of documentary and transfer taxes, if any.

(e)     All documents or other deliveries required to be made by Purchaser or Seller at Closing, and all transactions required to be consummated concurrently with Closing, shall be deemed to have been delivered and to have been consummated simultaneously with all other transactions and all other deliveries, and no delivery shall be deemed to have been made, and no transaction shall be deemed to have been consummated, until all deliveries required by Purchaser, or its designee, and Seller shall have been made, and all concurrent or other transactions shall have been consummated.

(f)     At the request of either party, the transaction shall be closed by means of a so-called "New York Style Closing," with the concurrent delivery of the documents of title, transfer of interests, delivery of the title policy described in Section 4.02 and the payment of the Purchase Price. The Seller shall provide any undertaking (the "Gap Undertaking") to the Title Company necessary for the New York Style Closing to occur. Seller and Purchaser shall each pay fifty percent (50%) of the charges of the Title Company for such New York Style Closing.

*ARTICLE V*
*BROKERAGE AND ADMINISTRATIVE FEE*

*5.01     Consulting Fee.* Seller hereby represents and warrants to Purchaser that Seller has not dealt with any broker or finder with respect to the transaction contemplated hereby except that Michael O'Connor ("O'Connor") one of the indirect principals of the Debtor (who subject to approval of the Court) may be paid an Administrative Fee for arranging and negotiating the terms of the sale, whose fee, if any, shall be paid by exclusively Seller; and Seller hereby agrees to indemnify, defend and hold harmless Purchaser for any claim for brokerage commission or finder's fee asserted by a person, firm or corporation claiming to have been engaged by Seller. Purchaser hereby represents and warrants to Seller that Purchaser has not dealt with any broker or finder in respect to the transaction contemplated hereby and Purchaser hereby agrees to indemnify, defend and hold

A-5

harmless Seller for any claim for brokerage commission or finder's fee asserted by a person, firm or corporation other than O'Connor claiming to have been engaged by Purchaser.

*ARTICLE VI*
*DESTRUCTION, DAMAGE OR CONDEMNATION*

6.01    *Destruction or Damage.* If, subsequent to the date hereof and prior to the Closing Date, all or any material portion of the Property shall be destroyed or damaged by one or more incidents of vandalism, fire and/or other casualty, whether or not covered by insurance, Seller shall immediately give Purchaser notice of such occurrence, and Purchaser may, within ten (10) days after receipt of such notice, elect to (a) terminate this Agreement, in which event the Deposit, and any interest thereon, shall be returned forthwith to Purchaser, all obligations of the parties hereunder shall cease, except for those obligations which expressly survive the termination of this Agreement or closing of the transaction contemplated hereby, and this Agreement shall have no further force and effect, or (b) close the transaction contemplated hereby as scheduled (except that if the Closing Date is less than ten (10) days following Purchaser's receipt of such notice, closing shall be delayed until Purchaser makes such election), without a reduction in the Purchase Price in which event Purchaser shall have the right to participate in the adjustment and settlement of any insurance claim relating to said damage, and Seller shall assign and/or pay to Purchaser at closing all insurance proceeds (and other related choses in action, if any) collected or claimed with respect to said loss or damage plus any deductible or self-insured amount. Purchaser's failure to give such notice within such time period shall be conclusive evidence that Purchaser has waived the option to terminate and Purchaser shall be deemed to have elected (b) above.

6.02    *Condemnation.* If, subsequent to the date hereof and prior to the Closing Date, any proceeding-judicial, administrative or otherwise-which shall relate to the proposed taking of any substantial portion of the Property by condemnation or eminent domain or any action in the nature of eminent domain, or the taking or closing of any right of access to the Property, is instituted or commenced, Purchaser shall have the right and option to terminate this Agreement by giving Seller written notice to such effect within ten (10) days after actual receipt of written notification of any such occurrence or occurrences. Purchaser's failure to give such notice within such time shall be conclusive evidence that Purchaser has waived the option to terminate by reason of the occurrence or occurrences of which it has received notice, and Purchaser shall be credited with or be assigned all Seller's right to any proceeds there from and there shall be no reduction in the Purchase Price. Seller agrees to furnish Purchaser written notification with respect to any such proceedings within forty-eight (48) hours of Seller's receipt of any such notification or learning of the institution of such proceedings. Should Purchaser elect to so terminate this Agreement, the Deposit plus any interest thereon shall be returned forthwith to Purchaser, and thereupon the parties hereto shall be released from any and all further obligations hereunder except for those obligations which expressly survive the termination of this Agreement or closing of the transaction contemplated hereby. If the Closing Date is less than ten (10) days following the last day on which Purchaser is entitled to elect to terminate this Agreement, then the closing shall be delayed until Purchaser makes such election. Notwithstanding the foregoing, if such proceeding by way of condemnation or eminent domain shall be "insubstantial" Purchaser shall not have the right to terminate this Agreement but shall be credited with or be assigned all Seller's right to any proceeds there from. An "insubstantial" proceeding shall be one which (i) does not relate to the taking or closing of any right of access to the Property, (ii) affects only the perimeter of the Property and does not involve more than the

A-6

equivalent of $500,000 in value, and (iii) does not involve any relocation of utility facilities serving the Property (provided this latter condition shall be deemed deleted if Seller shall agree to pay any cost of relocation of any of the same and may use such part of the proceeds of the award allocable thereto for such purpose).

*ARTICLE VII*
*COVENANTS REPRESENTATIONS AND WARRANTIES*

7.01    *Affirmative Covenant of Seller.* From the date of Seller's acceptance hereof to the Closing Date, Seller shall maintain or cause to be maintained in full force and effect liability, casualty and other insurance upon and in respect to the Property against such hazards. Seller acknowledges that Purchaser may wish to change the zoning of the property to accommodate Purchaser's proposed development of the Property. From the date hereof through the Closing Date Seller shall cooperate with Purchaser with respect to such rezoning efforts, including, without limitations, execute any and all applications granting the Purchaser approval to file and prosecute applications for land use approvals, including applications for planned development approvals, variation, and special uses.

7.02    *Representations and Warranties of Seller.* Seller hereby represents and warrants to Purchaser as follows:

(a)    Seller has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby. This Agreement is, and on the Closing Date will be, duly authorized, executed and delivered by and is binding upon the Seller.

(b)    Neither the execution and delivery of this Agreement nor the consummation of the transactions herein contemplated conflict with or result in the material breach of any terms, conditions or provisions of or constitute a default under, any agreement to which the Property is bound.

(c)    There is no pending or, to Seller's actual knowledge, threatened condemnation action affecting the Property.

(d)    Seller is not a "foreign person" within the meaning of Sections 1445 and 7701 of the Internal Revenue Code of 1986, as amended.

(e)    Other than the bankruptcy proceedings, there is no action, suit or proceeding pending or, to Seller's actual knowledge, threatened against Seller in any court or by or before any other governmental agency or instrumentality which would materially and adversely affect the ability of Seller to carry out the transactions contemplated by this Agreement.

7.03    *Survival.* The representations and warranties of Seller set forth in this Agreement shall be deemed remade as of Closing, and said representations and warranties as so remade and modified pursuant to any Statement of Modification (as hereinafter defined) shall be deemed merged into the Deed and shall not survive the Closing. In the event that, prior to Closing, Seller discovers that, as of Closing, any representation or warranty of Seller is or will be inaccurate, untrue or

A-7

incorrect, Seller may give Purchaser one or more notices of any modifications (each, a "Statement of Modification") to the representations and warranties of Seller set forth in this Agreement.

7.04    *Representations and Warranties of Purchaser.* Purchaser hereby represents and warrants to Seller as follows:

(a)    Purchaser has the power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby. This Agreement is, and on the Closing Date will be, duly authorized, executed and delivered by and is binding upon the Purchaser. Purchaser is a _____, validly existing and in good standing under the Legal Requirements of the State of _____, is qualified to transact business in the State of Illinois, and is duly authorized and qualified to do all things required of it under this Agreement.

(b)    Neither the execution and delivery of this Agreement nor the consummation of the transactions herein contemplated conflict with or result in the material breach of any terms, conditions or provisions of: or constitute a default under, any bond, note, or other evidence of indebtedness or any agreement to which Purchaser is a party.

(c)    There is no action, suit or proceeding pending or, to Purchaser's knowledge, threatened against Purchaser in any court or by or before any other governmental agency or instrumentality which would materially and adversely affect the ability of Purchaser to carryout the transactions contemplated by this Agreement.

(d)    Purchaser has not made a general assignment for the benefit of creditors, filed any voluntary petition in bankruptcy, admitted in writing its inability to pay its debts as they come due or made an offer of settlement, extension or composition to its creditors generally. Purchaser has not received any written notice of (i) the filing of an involuntary petition by Purchaser's creditors, (ii) the appointment of a receiver to take possession of all, or substantially all, of Purchaser's assets, or (iii) the attachment or other judicial seizure of all, or substantially all, of Purchaser's assets.

(e)    To Purchaser's actual knowledge, Purchaser is not aware of any material inaccuracy in the information delivered to Purchaser in connection with the transaction contemplated hereby.

7.05    *Survival.* The representations and warranties of Purchaser set forth in this Agreement shall be deemed remade as of Closing, and said representations and warranties as so remade and modified pursuant to any Statement of Modification (as hereinafter defined) shall not survive the Closing. In the event that, prior to Closing, Purchaser discovers that, as of Closing, any representation or warranty of Purchaser is or will be inaccurate, untrue or incorrect, Purchaser may give Seller one or more notices of any modifications (each, a "Statement of Modification") to the representations and warranties of Purchaser set forth in this Agreement.

*7.06    AS IS CONDITION – DISCLAIMER OF WARRANTIES.*

EXCEPT FOR THE COVENANTS, REPRESENTATIONS AND WARRANTIES OF SELLER EXPRESSLY SET FORTH IN THIS AGREEMENT, PURCHASER WARRANTS AND ACKNOWLEDGES TO AND AGREES WITH SELLER THAT PURCHASER IS PURCHASING THE PROPERTY IN ITS "AS-IS, WHERE IS" CONDITION "WITH ALL FAULTS" AS OF THE CLOSING DATE AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, AS TO ITS CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY, OR ANY OTHER WARRANTY OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF SELLER. EXCEPT FOR THE COVENANTS, REPRESENTATIONS AND WARRANTIES OF SELLER EXPRESSLY SET FORTH IN THIS AGREEMENT, SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY CONDUCT THEREON, INCLUDING THE POSSIBILITIES FOR FUTURE DEVELOPMENT OF THE PROPERTY, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) THE PRESENCE OR ABSENCE OF HAZARDOUS MATERIALS AT, ON, UNDER, OR ADJACENT TO THE PROPERTY OR ANY OTHER ENVIRONMENTAL MATTER OR CONDITION OF THE PROPERTY, OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE COVENANTS, REPRESENTATIONS AND WARRANTIES OF SELLER CONTAINED IN THIS AGREEMENT, ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND EXCEPT TO THE EXTENT INDICATED IN THE REPRESENTATIONS AND WARRANTIES OF SELLER CONTAINED IN THIS AGREEMENT, THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION. SELLER SHALL NOT BE LIABLE OR BOUND IN ANY MANNER BY ANY ORAL OR WRITTEN STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON EXCEPT FOR THE EXPRESS COVENANTS, REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT PURCHASER IS A SOPHISTICATED AND EXPERIENCED PURCHASER OF PROPERTY

A-9

SUCH AS THE PROPERTY AND HAS BEEN DULY REPRESENTED BY COUNSEL IN CONNECTION WITH THE NEGOTIATION OF THIS AGREEMENT AND THE OTHER PURCHASE DOCUMENTS. SELLER FURTHER ACKNOWLEDGES AND AGREES THAT SELLER IS A SOPHISTICATED AND EXPERIENCED SELLER OF PROPERTY SUCH AS THE PROPERTY AND HAS BEEN DULY REPRESENTED BY COUNSEL IN CONNECTION WITH THE NEGOTIATION OF THIS AGREEMENT AND THE OTHER PURCHASE DOCUMENTS. SELLER HAS MADE NO AGREEMENT TO ALTER, REPAIR OR IMPROVE THE PROPERTY.

*ARTICLE VIII*
*CONDITIONS PRECEDENT AND TERMINATION*

8.01    *Conditions to Purchaser's Obligations.*

(a)    Between the date hereof and the Closing the Purchaser and its representatives shall be permitted to enter upon the Property at any reasonable time and from time to time to examine, inspect and investigate the Property and all books, records, drawings and other documentation relating thereto in the possession or control of Seller (collectively, the "Inspections"), subject to the terms, conditions and limitations set forth in the following provisions of this Section. All of the Inspections shall be conducted at the expense of Purchaser without contribution from Seller of any kind or amount except as may otherwise be provided for herein.

(b)    Not less than twenty four (24) hours prior to entering upon the Property, Purchaser shall notify Broker of the intended Inspections and Purchaser shall coordinate all on site inspecting and testing of the Property with a specified representative of Seller prior to entering the Property on every occasion. At Seller's election, a representative of Seller may be present during any entry by Purchaser or its representatives upon the Property for conducting said Inspections. Purchaser shall be in full compliance with this Agreement as a condition to the performance of Purchaser's Inspections hereunder. Purchaser shall not cause or permit any mechanics' liens or other liens to be filed against the Property as a result of the Inspections. Notwithstanding anything set forth herein to the contrary, Purchaser shall not be permitted to perform any Phase II environmental assessments or any other invasive tests that require the physical alteration of the Property (including, without limitation, borings or samplings) without the prior written consent of Seller (which consent shall not be unreasonably withheld or delayed).

(c)    Purchaser agrees and covenants with Seller not to disclose any of the reports or any other documentation or information obtained by Purchaser which relate to the Property or Seller to any third party (other than advisors, financial institutions, accountants, attorneys, potential investors, potential lenders, potential threats and other professionals and consultants working for Purchaser in connection with the acquisition of the Property who are expressly made aware that such information is confidential) without Seller's prior written consent, unless Purchaser is obligated by Legal Requirements (foreign or domestic) to make such disclosure. All diligence information acquired by Purchaser hereunder shall be used by Purchaser and its agents solely in connection with the transactions contemplated hereby.

(d)    Purchaser agrees to indemnify, defend and hold Seller and its managers, members, partners, trustees, beneficiaries, shareholders, directors, officers, employees, advisors,

consultants and other agents and their respective managers, members, partners, employees, officers, directors, shareholders, trustees, beneficiaries, advisors, consultants and other agents (collectively, the "Seller Indemnified Parties") harmless from and against any and all claims, losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and court costs) suffered or incurred by any of the Seller Indemnified Parties as a result of or in connection with any inspections of Purchaser conducted pursuant to or in violation of this Section, including, without limitation, mechanics' liens, damage to the Property and injury to persons or property resulting from such activities and, in connection therewith, in the event that the Property is damaged, disturbed or altered in any way as a result of such activities, Purchaser shall promptly restore the Property to substantially the same condition existing prior to the commencement of such activities. This indemnification shall survive termination of this Agreement or the closing of the transaction contemplated hereby.

(e)    The obligation of Purchaser to close the transaction contemplated hereby is, at the option of Purchaser, subject to Purchaser's being satisfied, in Purchaser's sole and absolute discretion, with the zoning for the Property, the feasibility of developing the Property, and the results of its physical inspections of the Property, including, but not limited to, environmental and engineering reports (the "Feasibility Contingency"). Purchaser shall have through the Due Diligence Period for satisfaction of the Feasibility Contingency.  If Purchaser does not terminate this Agreement by written notice to Seller given prior to the expiration of the Due Diligence Period, Purchaser shall be deemed to have satisfied the Feasibility Contingency, in which event, subject to the terms and conditions hereof, Purchaser shall be obligated to close the transaction contemplated hereby.  If Purchaser does terminate this Agreement by written notice to Seller given prior to the expiration of the Due Diligence Period, the Deposit shall be forfeited to the Seller in consideration of Seller granting purchaser this Feasibility Contingency and, thereupon, this Agreement shall become null and void and neither party shall have any further rights and obligations hereunder.

*ARTICLE IX*
*DEFAULTS AND REMEDIES*

*9.01    Seller Defaults.*  In the event that Seller, on or prior to the Closing Date, shall default in the performance of its obligations hereunder, Purchaser, as its sole and exclusive remedy, may terminate this Agreement and receive a refund of the Deposit.

*9.02    Purchaser Defaults.*  In the event that Purchaser shall default in the performance of its obligations under this Agreement and fail to close on the purchase of the Property on or before the Closing Date or the date specified in the Closing Notice, as the case may be, then Seller, as its sole and exclusive remedy, may terminate this Agreement by notifying Purchaser thereof and receive from the Escrowee the Deposit, together with any interest earned thereon as agreed upon liquidated damages and neither Purchaser nor Seller shall have any further obligations or liabilities hereunder, except for any obligations which specifically survive the termination of this Agreement. Notwithstanding that Seller's actual damages would be uncertain and difficult to ascertain, Purchaser and Seller agree that the liquidated damage sum is fair and bears a reasonable relationship to the damages that Seller might sustain in the event of Purchaser's failure to consummate the transaction under this Agreement. **THE PAYMENT OF THE DEPOSIT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY.** The provisions of this Section

A-11

9.1 shall not limit Seller's right to pursue and recover on a claim with respect to any of the obligations which survive termination.

    *9.03    Attorneys' Fees and Costs.* Notwithstanding any provision of this Agreement to the contrary, in the event legal action is instituted to interpret or enforce the provisions of this Agreement, the prevailing party shall be entitled to recover from the other party the prevailing party's costs and attorney's fees, including, without limitation, all costs and fees that are incurred in any trial or on any appeal.

*ARTICLE X*<br>*NOTICES*

    *10.01    Notices.* Any notice, request, demand, instruction or other document to be given or served hereunder or under any document or instrument executed pursuant hereto shall be in writing and shall be delivered personally or sent by United States registered or certified mail, return receipt requested, or by overnight express courier, postage prepaid and addressed to the parties at their respective addresses set forth below, and the same shall be effective upon receipt if delivered personally or two (2) business days after deposit in the mails, if mailed, or one (1) business day after deposit with an overnight express courier. A party may change its address for receipt of notices by service of a notice of such change in accordance herewith.

If to Purchaser: _____
_____
_____

With a copy to: _____
_____
_____

If to Seller: BROADWAY 3012, LLC
BAUCH & MICHAELS, LLC
C/O Paul M. Bauch, Esq.
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: 312-427-5709

If to Escrowee:
BAUCH & MICHAELS, LLC
C/O Paul M. Bauch, Esq.
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: 312-427-5709

A-12

**Agreement of Sale and Purchase**

## *ARTICLE XI*
## *ADDITIONAL COVENANTS*

*11.01  Entire Agreement, Amendments and Waivers.* This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof; and the same may not be amended, modified or discharged nor may any of its terms be waived except by an instrument in writing signed by the party to be bound thereby.

*11.02  Further Assurances.* The parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action before or after the closing as shall be necessary or desirable to fully carry out this Agreement and to fully consummate and effect the transactions contemplated hereby.

*11.03  No Third Party Benefits.* Purchaser shall not assign this Agreement without the prior written consent of Seller in each instance. This Agreement is for the sole and exclusive benefit of the parties hereto and their respective permitted successors and permitted assigns, and no third party is intended to or shall have any rights hereunder.

*11.04  Interpretation.*

(a)     The headings and captions herein are inserted for convenient reference only and the same shall not limit or construe the paragraphs or Sections to which they apply or otherwise affect the interpretation hereof.

(b)     The terms "hereby," "hereof," "hereto," "herein," "hereunder" and any similar terms shall refer to this Agreement, and the term "hereafter" shall mean after, and the term "heretofore" shall mean before, the date of this Agreement.

(c)     Words of the masculine, feminine or neuter gender shall mean and include the correlative words of other genders, and words importing the singular number shall mean and include the plural number and vice versa.

(d)     Words importing persons shall include firms, associations, partnerships (including limited partnerships), trusts, corporations and other legal entities, including public bodies, as well as natural persons.

(e)     The terms "include," "including" and similar terms shall be construed as if followed by the phrase "without being limited to."

(f)     This Agreement and any document or instrument executed pursuant hereto maybe executed in any number of counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(g)     Whenever under the terms of this Agreement the time for performance of a covenant or condition falls upon a Saturday, Sunday or holiday, such time for performance shall be extended to the next business day. Otherwise all references herein to "days" shall mean calendar days.

EAST\43180412.2

(h)    This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

(i)    Time is of the essence of this Agreement.

*11.05  Exculpation of Seller and Related Parties.* Notwithstanding anything to the contrary contained in this Agreement or in any exhibits attached hereto or in any documents executed in connection herewith (collectively, "Purchase Documents"), it is expressly understood and agreed by and between the parties hereto that the recourse of Purchaser or its successors or assigns against Seller with respect to the alleged breach by or on the part of Seller of any representation, warranty, covenant, undertaking, indemnity or agreement contained in any of the Purchase Documents or with respect to any other obligation or liability whatsoever under the Purchase Documents, shall extend only to Seller's interest in the Property (including the proceeds from the sale of the Property), but shall not extend to any other assets of the Seller or the assets of its members, partners, shareholders, beneficiaries, or any other direct or indirect equity holders, or any of their employees, advisors, representatives or other agents or affiliates.

*ARTICLE XII*
*BANKRUPTCY COURT APPROVAL*

THE PARTIES ACKNOWLEDGE THAT THE CLOSING OF THE TRANSACTION CONTEMPLATED HEREBY SHALL BE SUBJECT TO THE APPROVAL OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.

A-14

**Agreement of Sale and Purchase**

IN WITNESS WHEREOF, this Agreement has been executed and delivered by Seller and Purchaser on the respective dates set forth beneath each of their signatures and is intended to be effective as of the latest such date.

PURCHASER:

_____

By: _____

Its: _____

Date:_____


SELLER:

BROADWAY 3012, LLC,

_____

By: _____

Its: _____

Date:_____

A-15

**Agreement of Sale and Purchase**

EXHIBIT A

LEGAL DESCRIPTION

Parcel 1:

The North 1/2 of Lot 4 (except the West 90 feet thereof) and all of Lots 1, 2, 3 in Block 5 in Knoke and Gardner's Subdivision of 20 acres North of and adjoining the South 30 acres of the West 1/2 of the Northwest 1/4 of Section 28, Township 40 North, Range 14 East of the Third Principal Meridian, in Cook County, Illinois.

Parcel 2:

The East 150 feet of Lot 7, and all of Lot 8 in the Subdivision by John Noble of that party of Lot 2, lying East of the State Ditch of Bickerdike and Steele's Subdivision of the West 1/2 of the Northwest 1/4 of Section 28, Township 40 North, Range 14 East of the Third Principal Meridian (excepting from said East 150 feet of Lot 7, that portion thereof, if any, lying North of a line 384 feet North of the North line of Wellington Avenue, as widened), in Cook County, Illinois.

PINS:  14-28-107-027-0000 and 14-28-107-059-0000

A-16

**Agreement of Sale and Purchase**

EXHIBIT B

PERMITTED TITLE EXCEPTIONS

1.      General real estate taxes not yet due and payable.

2.      Right of First Refusal recorded as Document No. 0914129086.

3.      Acts of Purchaser.

B-1

EXHIBIT C

NON-FOREIGN AFFIDAVIT

Section 1445 of the Internal Revenue Code of 1986, as amended, provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. For U.S. tax purposes (including Section 1445 of the Internal Revenue Code of 1986, as amended), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local Law) will be the transferor of the property and not the disregarded entity. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by Broadway 3012, LLC, an Illinois limited liability company ("Transferor"), the undersigned hereby certifies the following:

1.      Transferor is not a foreign corporation, foreign partnership, foreign trust, foreign estate, or foreign person (as those terms are defined in the Internal Revenue Code and the Income Tax Regulations promulgated there under);

2.      Transferor's U.S. employer identification number is 20-8143207; and

3.      Transferor's address is 212 E. Ohio Street, Chicago, Illinois 60617.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by the transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury the undersigned declares that it has examined this certification and to the best of its knowledge and belief it is true, correct and complete, and it further declares that it has authority to sign this document on behalf of Transferor.

Dated:_____, 2010

BROADWAY 3012, LLC,

_____

By: _____
Its: _____
Date:_____

C-1